UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
—————————————————————————

THOMAS KAMINSKI,

                    Petitioner,

          V.

CALVIN RAPSATT, Superintendent,

                 Respondent.

—————————————————————————

**REPORT AND
RECOMMENDATION**

07-CV-1119
(TJM/VEB)

## I. INTRODUCTION

Petitioner Thomas Kaminski, acting *pro se*, commenced this action seeking relief pursuant to 28 U.S.C. § 2254. Petitioner is an inmate at the Marcy Correctional Facility in Marcy, New York. In 1980, he was convicted in a New York State court of first degree rape, two counts of first degree sodomy, and second degree burglary. Later, in 1983, the New York Court of Appeals reversed the two sodomy convictions. In 1996, Petitioner was classified as a Risk Level 3 Sex Offender with respect to his rape conviction under New York's Sex Offender Registration Act. Petitioner does not challenge his underlying conviction, but rather the New York State Division of Parole's conduct and his reclassification as a Risk Level 3 Sex Offender.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 18).

## II. BACKGROUND

**A.    Facts**

Petitioner does not contest his underlying convictions or the facts of his convictions.

By way of background, the following factual summary was provided in the Appellate

Division, Third Department's decision on Petitioner's direct appeal:

> On the evening of October 20, 1979, complainant, home alone with her
> 15-month-old baby, fell asleep awaiting her husband's return, later that
> night, from a business trip. Their dwelling was located in a rural area, the
> nearest neighbor being approximately one-quarter mile away. Sometime
> after 10:00 P.M., this slight 114-pound, five-foot four-inch woman felt
> something covering her face and awoke to the frightful apparition of an
> intruder wearing a ski mask and holding a gloved hand over her mouth.
> She testified that at that point she believed she was going to die. The
> masked man then said "quiet" and, while kneeling on the bed between her
> and the only doorway to the room, demanded money. When the victim,
> who further testified she feared not only for her own but her child's safety
> as well, acceded to his request and started up from the bed to get money,
> defendant pushed her back down declaring, "No, I want you". While
> throughout she kept imploring him not to hurt her or the baby and leave,
> defendant unmasked, disrobed, yanked away the covers she was
> clutching and penetrated her until she summoned enough strength to push
> him away. Her attempt to escape was thwarted when he grasped her leg,
> after which he sodomized her, and then fled. The victim immediately
> reported the incident to her neighbors and the police.

People v. Kaminski, 87 A.D.2d 724, 724-725 (3d Dep't 1982).

Petitioner was convicted after trial on the following charges: Rape in the First

Degree, two counts of Sodomy in the First Degree, and Burglary in the Second Degree.

Petitioner was sentenced on May 23, 1980, to an indeterminate term of imprisonment of

eight and one third (8 1/3) years to twenty five (25) years for each of the rape and sodomy

convictions, and a concurrent term of five (5) to fifteen (15) years for the burglary conviction.  (Docket No.16, at "Exhibit A").

Petitioner appealed his conviction to the Appellate Division, Third Department on the grounds that the evidence of rape was insufficient, certain evidence was improperly introduced, and his sentence was harsh and excessive.  On March 25, 1982, the Appellate Division unanimously affirmed Petitioner's judgment of conviction.  Kaminski, 87 A.D.2d at 724-25.  On February 15, 1983, the New York Court of Appeals reversed the sodomy convictions, finding error in the trial court's jury instructions, but affirmed Petitioner's other convictions.  People v. Kaminski, 58 N.Y.2d 886 (1983).

**B.     Parole**

On February 9, 1989, Petitioner was released to parole supervision.  (Docket No. 16 "Exhibit D").  In 1991, while on parole, he was arrested for criminal impersonation.  (Id.).  Petitioner was returned to prison, but was re-paroled on May 1, 1992. (Id. at "Exhibit E").

**C.     Sex Offender Registration Act Reclassification**

In February of 1996, Petitioner was classified as a Risk Level 3 Sex Offender under New York's Sex Offender Registration Act ("SORA").  See N.Y. Correct. Law § 168 et seq. Level-three offenders must personally verify their address with the local law enforcement agency every ninety days. See id. § 168-f(3).

**D.     Further Convictions**

In 1999, Petitioner was arrested, indicted for, and pled guilty to, unlawful production of official United States identification documents, in violation of 18 U.S.C. §1028 (a)(1); possession of false identification documents, in violation of 18 U.S.C. §1028(a)(6); forging the signature of a United States Magistrate Judge, in violation of 18 U.S.C. §505; and the manufacture and possession of false badges, identification cards, and insignia, in violation of 18 U.S.C. §701. United States v. Kaminski, 229 F.3d 1136, 2000 WL 1527932  (2d Cir. October 12, 2000)(unpublished decision).

These convictions were the result of a visit by Petitioner's parole officers to his home, where the officers discovered a web page containing an advertisement by Petitioner for the sale of police badges.  The parole officers conducted a further search and found, among other things, a New York State Inspector General's identification tag with Petitioner's name and photograph on it, a Department of Criminal Justice Service Investigator's identification card, two police shields, two official parking placards, a U.S. Marshal's certificate of appointment bearing Petitioner's name, two police radio frequency scanners, and a police gun belt. Id. at *1.

Petitioner was also charged in Broome County with two counts of Forgery in the Second Degree, in violation of New York Penal Law ("NYPL") §170.10(3) and ten counts of Criminal Possession of a Forged Instrument in the Second Degree, in violation of NYPL §170.25.  Petitioner pled guilty to both forgery counts and six of the ten possession counts. On February 14, 2000, Petitioner was sentenced, as a second felony offender, to a concurrent indeterminate term of two (2) to four (4) years imprisonment for each conviction. On June 14, 2001, the Appellate Division, Third Department unanimously affirmed the judgment. People v. Kaminski, 284 A.D.2d 660 (3d Dep't 2001).  The New York Court of

4

Appeals denied Petitioner leave to appeal on November 28, 2001.  People v. Kaminski, 97 N.Y.2d 656 (2001).

On March 9, 2000, Petitioner was sent back to state prison to complete the remaining portion of his sentence from the Chemung County convictions (the 1980 convictions), and to serve his sentences in the federal and Broome County cases.  See (Docket No. 16 at "Exhibit I").

**E.      SORA Proceedings**

In 2004, the Board of Examiners of Sex Offenders reviewed Petitioner's case and recommended that he be re-classified as a Risk Level 3 Sex Offender.  (Docket No. 16 at "Exhibit K").  Thereafter, on October 4, 2004, Petitioner appeared before the County Court with a court-appointed attorney, Michael P. Nevins, Esq., and demanded a hearing.  (Id. at "Exhibit M").  Petitioner's hearing took place on December 2, 2004.  The People argued that Petitioner was a Risk Level 3 by virtue of the score he received when the Board of Examiners assessed him using the SORA Risk Assessment Instrument[1] ("RAI").  Petitioner argued that he never received a copy of the RAI.  The court provided Petitioner with a copy of the RAI and adjourned the proceedings.  (Id. at "Exhibit P" 17-20, 27-19).

When the hearing proceeded, Petitioner was represented by new counsel, Paul R. Corradini, Esq. Petitioner was the sole witness at the hearing and challenged the RAI risk factor calculation.  For example, he claimed that risk factor seven of the RAI had been assessed incorrectly.  Risk factor seven deals with the relationship to the victim.  Petitioner claimed his score was too high because the victim was not a stranger to him and that his

---

[1] The RAI uses fifteen enumerated risk factors to tally the sex offender's risk factor score.

5

girlfriend's brother boarded horses on the victim's property, and that, the victim allowed him to order pizza from her phone on several occasions. (Id. at "Exhibit O" 37-38).

In an order dated July 26, 2005, the County Court re-classified Petitioner a Risk Level 3 Sex Offender.  The County Court rejected Petitioner's claim that he was not a stranger to the victim. The Court cited SORA as defining "stranger" as "anyone who is not an actual acquaintance of the victim." (Id. at "Exhibit K" 1-2).  The County Court found Petitioner's remaining arguments meritless and found him to be a "high risk to the community." (Id. at 3-4).

Petitioner, represented by Randolph V. Kruman, Esq., appealed to the Appellate Division, Third Department.  On March 22, 2007, the Appellate Division, Third Department, unanimously affirmed the County Court's decision.  People v. Kaminski, 38 A.D.3d 1127 (3d Dep't 2007).  Leave to appeal to the New York Court of Appeals was denied on June 28, 2007.  People v. Kaminski, 9 N.Y.3d 803 (2007).

**F.    Article 70 Proceeding**

On November 13, 2007, Petitioner, represented by A.J. Bosman, Esq., moved pursuant to Article 70 of the New York Civil Practice Law and Rules ("CPLR"), for release from prison.  Petitioner argued that his parole officer failed to submit his three year discharge application, with respect to his 1980 convictions, resulting in his incarceration. (Docket No. 16 at "Exhibit Y").  The New York State Department of Corrections opposed the motion, arguing that it was without factual or legal basis.  (Id. at "Exhibit Z").

On February 5, 2008, the Oneida County Supreme Court ruled that "the Division of Parole's failure to submit the Petitioner's three year discharge papers while Petitioner was on parole was arbitrary, capricious, and an abuse of discretion."  (Id. at "Exhibit AA").  The

Court referred the matter to the Division of Parole for a review of the decision.[2]

## G.   Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on October 23, 2007, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1).  In his Petition, Petitioner asserts that: (1) the New York State Division of Parole violated his constitutional rights by failing to follow its own procedures that required it to re-submit his three-year discharge papers prior to his February 1998 parole review; (2) the RAI is unconstitutional because it fails to take into account the recency of the offender's crimes; (3) Attorneys Nevins and Corradini, who represented Petitioner prior to and during the SORA hearing, provided ineffective assistance; and (4) Attorney Kruman, who represented Petitioner with respect to the SORA appeal, provided constitutionally ineffective representation.  Respondent filed a Response and memorandum of law in opposition on May 29, 2008.  (Docket Nos. 13, 14,& 16).

For the reasons that follow, the petition for habeas corpus should be DISMISSED.

## III. DISCUSSION

## A.   Federal Habeas Standard

Federal habeas corpus review of a state court parole decision is governed by 28 U.S.C. § 2254 , as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under  AEDPA, federal courts must give substantial deference to a state court

---

[2]To date, this Court has not been updated on the status of the Division of Parole's review of the decision.

determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), and AEDPA requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court

8

arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case."  Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence."  Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.   Petitioner's Claims**

As noted above, Petitioner does not challenge his underlying convictions, but raises four challenges to post-conviction proceedings in the New York State courts.  Each claim will be addressed in turn.

   **1.    Submission of Parole Discharge Papers**

Petitioner argues that his constitutional rights were violated because the New York State Division of Parole failed to resubmit his three-year discharge papers in a timely

fashion.  The background with respect to this claim may be summarized as follows:

As noted above, Petitioner was originally convicted and sentenced in 1980.  He was released to parole supervision on February 9, 1989, but was arrested for criminal impersonation and returned to prison in February 1991.  Petitioner was re-paroled on May 1, 1992.

The parties appear to agree that Section 9208.02 of the New York State Division of Parole Policy & Procedure Manual provides that parole officers are to prepare an application for discharge of sentence to the Board of Parole in the 34th month following release on parole and to submit the application to the Board in the 36th month.[3]  In this case, the discharge application apparently should have been submitted to the Board in approximately February of 1992 (*i.e.*, thirty-six months after Petitioner's release).[4]

There also appears to be no dispute regarding the fact that Petitioner's parole officer failed to submit the discharge application until February of 1996, approximately eight-four (84) months after Petitioner was released to parole.[5]  It further appears that the Parole Board denied the application, but directed that it be resubmitted in February 1998.  The

---

[3]This Court was not provided with a copy of the New York State Division of Parole Policy & Procedure Manual and was unable to locate the manual via search of available databases.  In any event, the parties appear to be in agreement as to the substance of the applicable provision.

[4]The parties have not advised this Court as to whether the time period from February 1991 to May 1992, during which Petitioner's parole was revoked, should be counted toward the 36-month period.  In any event, even if that period is excluded, the discharge application was not submitted until February of 1996, which was beyond the 36-month timetable under either calculation.

[5]This sequence of events is alleged by Petitioner on p. 3 of his Petition.  The sections of Respondent's memorandum of law addressing this claim are remarkably unhelpful.  The state court records are likewise in  summary form, incomplete, and lacking in meaningful detail. In any event, Respondent has not offered an  indication to the effect that there is any evidence contradicting the key factual allegation underlying Petitioner's claim, namely, that his parole officer failed to submit a discharge application in a timely fashion.

application was apparently never resubmitted.[6]

Petitioner argues that he would have "effectively been eligible" for a discharge of his sentence in February 1992, but for his parole officer's failure.  Presuming that the discharge would have been granted if the application had been timely submitted, Petitioner argues that he (a) would not have been required to register as a sex offender under SORA when it became effective in 1996 and (b) would not have been on parole in May of 1999 and thus would not have been subjected to the search that ultimately led to his various federal and state convictions for forgery and related charges.

As previously set forth above, in November 2007, Petitioner filed a motion in the New York State Supreme Court, Oneida County, pursuant to Article 70 of the New York Civil Practice Law & Rules, challenging, *inter alia*, the parole officer's failure to timely submit the discharge application.  (Exhibit Y).[7]  On January 5, 2008, the Honorable Robert F. Julian, Justice of the Supreme Court, issued an Order finding that "the Division of Parole's failure to submit the Petitioner's three year discharge papers while Petitioner was on parole was arbitrary, capricious, and an abuse of discretion." (Exhibit AA).  Justice Julian accordingly referred the matter to the Parole Board for review and decision and directed that he (or his successor on the bench) would retain jurisdiction.[8]

_____

[6]This Court was not provided with the underlying documentation and, again, Respondent's papers (both those filed by the Attorney General in the state court proceedings and in this case) are remarkably deficient as to the critical facts and procedural history.

[7]It is not clear from the state court papers whether the challenge was made to (a) the failure to timely submit  the discharge application in the first instance (*i.e.* within 36 months of the original release date); (b) the failure to re-submit the application in February 1998; or (c) both.

[8]Justice Julian directed that the Parole Board issue a decision within sixty (60) days, which would have been approximately March 5, 2008.  However, neither Petitioner nor Respondent has provided this Court with an update concerning the status of the Parole Board's review and/or whether a decision was ever issued.

Because Petitioner's Article 70 motion was granted by the state court, it appears that his habeas claim is either moot (because he has already obtained the requested relief in state court) or premature (because the state court process has not been completed).  In any event, even assuming *arguendo* that the claim was properly exhausted and before this Court, it should be denied as clearly lacking in merit.

Subject to certain enumerated exceptions, section 259-j of the New York Executive Law gives the Parole Board discretion to discharge a parolee from supervision if it is in the best interests of society.  Construing Petitioner's *pro se* claim liberally, it appears that he is contending that the parole officer's failure to timely submit his discharge application in effect "short circuited" the review process, resulting in an arbitrary and capricious denial of right to a parole discharge under § 259-j.

Under the Fourteenth Amendment, a person may not be deprived of a constitutionally protected liberty interest without due process of law. See Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

However, a parolee has "no liberty interest in receiving early discharge from parole, as the statute authorizing early release [Executive Law § 259-j] leaves that determination to the discretion of the Parole Board." Pena v. Travis, No. 01 Civ.8534, 2002 WL 31886175, at *12 (S.D.N.Y Dec. 27, 2002); see also Hall v. New York State Div. of Parole, No. 99-CIV-11317, 2000 WL 1099950, at *3 (S.D.N.Y. July 13, 2000)("Petitioner's claim that he was not given a parole evaluation hearing in 1997 that might have resulted in his release from parole before his September 1998 arrest is unfounded. N .Y. Executive Law 259-j leaves early parole discharge to the Parole Board's discretion."); Smiley by Smiley v. Westby, No. 87 Civ. 6047, 1994 WL 519973, at *5 (S.D.N.Y. Sep. 22, 1994)("The mere fact that New York's

parole scheme allows for the possibility of early discharge from parole, . . . does not grant those on parole a liberty interest in early discharge.").

As such, even if the untimely submission of the discharge application (and/or the failure to resubmit the application) was arbitrary or capricious, Petitioner was not deprived of a constitutionally protected liberty interest.

Moreover, even if the untimely submission of the discharge application and/or the failure to resubmit the application was contrary to the Division of Parole's Policy and Procedure Manual, Petitioner is "still unable to state a due process claim because the Policy and Procedure Manual does not have the force of law in New York and thus cannot give rise to a liberty interest." Smiley, 1994 WL 519973, at *6; see also Hall, 2000 WL 1099950 at *3.

Lastly, because Petitioner's original convictions included a conviction for first degree rape, it appears that he would have been ineligible for a discharge as a matter of law in any event.  Executive Law § 259-j does not permit a discharge to be granted if the parolee committed a "violent felony offense" as defined in New York Penal Law § 70.02.  Rape in the first degree is a "violent felony offense" under § 70.02, and was so at all times relevant to this claim.  Accordingly, it does not appear that Petitioner would have been eligible for a discharge even if his application had been submitted in a timely fashion.[9]  For the foregoing reasons, Petitioner's claim that he was deprived of his constitutional rights in connection with the discharge application process is plainly without merit and should be denied.

---

[9]The Attorney General presented this argument in the Article 70 proceeding.  Although Justice Julian ruled that the failure to timely submit the discharge application was "arbitrary, capricious, and an abuse of discretion," he did not make any finding that Petitioner was prejudiced thereby and the Order does not address the Attorney General's argument concerning Petitioner's apparent ineligibility for a discharge.  In any event, any claim Petitioner may have in this regard arises under state law and is not cognizable on habeas review.  As noted above, Petitioner has no federal constitutional liberty interest in early discharge from parole.

**2.      Constitutionality of RAI**

Petitioner argues that the Risk Assessment Guideline system used by the State of New York pursuant to SORA is unconstitutional because it fails to adequately account for the recency of the offender's crimes.

**a.      SORA**

SORA, which became effective on January 21, 1996, requires those convicted of certain enumerated sex crimes to register with the New York State Division of Criminal Justice.  See generally N.Y. Corrections Law § 168; Doe v. Pataki, 120 F.3d 1263, 1266 (2d Cir. 1997).  The registration information is shared with local law enforcement agencies and, depending upon the "risk level" assigned to the offender, law enforcement may notify the local community.  See N.Y. Corrections Law § 168-1 (6).

The risk level is determined by the New York State Board of Sex Offenders, using "risk assessment guidelines, developed with the assistance of a group of experts with experience in dealing with sex offenders . . . ." Doe v. Pataki, 3 F.Supp.2d 456, 461-62 (S.D.N.Y.1998).  "The several factors considered by the Board when determining the appropriate risk level include whether the offender has a mental abnormality or personality disorder, whether the offender's conduct was characterized by repetitive and compulsive behavior, the age of the offender and of the victim, the use of weapons, and the number of prior offenses." Woe v. Spitzer, 571 F.Supp.2d 382, 385 (E.D.N.Y.2008) (citing N.Y. Corrections Law § 168-1 (5)).  The sentencing court assigns a risk level to the sex offender based upon the SORA Board's recommendation.  N.Y. Corrections Law § 168-n.

SORA allows a sex offender to petition for an order "modifying the level of

14

notification." <u>See</u> N.Y. Corrections Law § 168-*o* (2).

Soon after SORA became effective, a class action suit challenging the constitutionality of the statute was filed in the Southern District of New York. <u>See</u> <u>Doe v. Pataki</u>, 940 F. Supp. 603 (S.D.N.Y. 1996).

The case proceeded through several stages of litigation, involving appeals to the United States Court of Appeals for the Second Circuit.  Ultimately, the State and the litigants reached an agreement creating various procedural protections that must be afforded to a sex offender in connection with the process for determining his or her risk level (*e.g.* right to notice and an opportunity to be heard, right to appointment of counsel).  <u>See</u> <u>Doe v. Pataki</u>, 481 F.3d 69, 73-74 (2d Cir. 2007).  The procedures were thereafter incorporated into SORA's statutory provisions. <u>See</u> N.Y. Corrections Law § 168-n.

**b.    Petitioner's SORA Proceedings**

In the present case, the Board reviewed Petitioner's case and determined that he should be classified as a Risk Level 3 Sex Offender (the highest risk category).  This determination was based upon Petitioner's score of 115, which was determined using the Board's Risk Assessment Guidelines ("RAG").  The RAG are used to create a Risk Assessment Instrument ("RAI"), which constitutes the Board's recommendation regarding the proper reclassification.  There is no dispute that Petitioner was assigned appointed counsel and received a hearing before the Chemung County Court to challenge the Level 3 categorization.  In July 2005, the County Court rejected Petitioner's challenge and classified him as a Risk Level 3 Sex Offender.

On appeal from the County Court's reclassification decision, Petitioner, through counsel, filed a brief with the Appellate Division, Third Department, arguing the

reclassification was improper because the victim was not a stranger to Petitioner and because the evidence relied upon by the prosecution was unreliable hearsay. (Exhibit S). In addition, counsel contended that Petitioner should have been granted a downward departure based upon the following mitigating factors: (1) the crime was committed in 1979 and Petitioner had not been charged or convicted of any sexual crimes since that time and (2) Petitioner's age, which was forty-nine (49) at the time of the appeal.

In a *pro se* submission filed in support of the appeal, Petitioner asserted that the RAI was flawed because it provided "no guidance as to how far back the Court should consider criminal conduct." (Exhibit U).

The County Court's ruling was affirmed by the Appellate Division, Third Department. People v. Kaminski, 38 A.D.3d 1127, 1128 (3d Dep't 2007). Petitioner, through counsel, sought leave to appeal to the Court of Appeals and incorporated by reference the arguments raised in his appellate counsel's brief to the Appellate Division. (Exhibit W). Petitioner did not raise any claim that SORA or the RAI were unconstitutional. The Court of Appeals denied the leave application. People v. Kaminski, 9 N.Y.3d 803 (2007).

### c.    Exhaustion

As noted above, Petitioner seeks habeas relief based upon the argument that the SORA and/or the RAI used by the Board are unconstitutional because the Guidelines do not account for the fact that an offender's crime may have occurred long ago. This claim was never fairly presented to the state courts. Although Petitioner argued in his *pro se* submission to the Appellate Division that the statute was "flawed" because it did not adequately account for the fact that his crime was committed in 1979, he did not challenge the constitutionality of the statute on that basis. Further, even assuming *arguendo* that such

16

a claim might be deemed to have been raised by Petitioner's *pro se* submission, the claims set forth in that submission were not presented to the Court of Appeals as part of the leave application. See Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir.2000).   This claim is therefore unexhausted and procedurally barred.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that-(A) the applicant has exhausted the remedies available in the courts of the State...." 28 U.S.C. § 2254(b)(1)(A); see e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir.1982) (en banc). This means that the petitioner must have alerted the state appellate court that a federal constitutional claim is at issue. See e.g., Grady v. LeFevre, 846 F.2d 862, 864 (2d Cir.1988).

A claim may be "fairly presented" to the state courts if "the legal basis of the claim made in state court was the 'substantial equivalent' of that of the habeas claim." Daye, 696 F.2d at 192 (2d Cir.1982) "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Id.

Additionally, a habeas petitioner may "fairly present" his or her federal claims "even without citing chapter and verse of the Constitution," by the following four methods, first summarized by the Second Circuit in Daye v. Attorney General of New York: (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so

17

particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. Daye, 696 F.2d at 194.

In the present case, as noted above, Petitioner did not "fairly present" his challenge to SORA and/or the RAI to the Court of Appeals in "federal constitutional terms." Thus, the conclusion is inescapable that Petitioner's claim is not exhausted.

For purposes of satisfying the exhaustion requirement, a federal habeas court need not require that a federal claim be presented to a state court if it is "clear" that the state court would hold the claim to be procedurally barred. Reyes v. Keane, 118 F.3d 136, 139 (2d Cir.1997) (quoting Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.1991)) (in turn quoting Harris v. Reed, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989)) (quotation marks omitted).

In such a case, a habeas petitioner does not have "remedies available in the courts of the State" within the meaning of 28 U.S.C. § 2254(b). Grey, 933 F.2d at 120. Claims that would face such a procedural bar are "deemed exhausted" by the federal courts. See, e.g., Reyes, 118 F.3d at 139; Washington v. James, 996 F.2d 1442, 1446-47 (2d Cir.1993); Grey, 933 F.2d at 120-21.

Petitioner no longer has any available remedies in the New York state courts, as he has already filed a direct appeal and application for leave to appeal. See N.Y. Court Rules § 500.10(a) (a defendant in New York has only one direct appeal). As a consequence, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim," Gray v. Netherland, 518 U.S. 152, 162, 116 S.Ct. 2074, 135

L.Ed.2d 457 (1996).

### d.   Procedural Default

A habeas petitioner's forfeiture in state court of his federal claims bars him from litigating the merits of those claims in federal habeas proceedings, absent a showing of cause for the procedural default and prejudice resulting therefrom. Grey, 933 F.2d at 121 (citing Murray v. Carrier, 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); Wainwright v. Sykes, 433 U.S. 72, 87-91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). Here, Petitioner also has not made the showing of "actual innocence" necessary to warrant the "fundamental miscarriage of justice" exception to the procedural default rule. See Schlup v. Delo, 513 U.S. 298, 314-16, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Because Petitioner asserts ineffective assistance of counsel claims, his Petition might arguably be read to suggest that the procedural default should be excused for "cause" because his attorneys improperly failed to prosecute the claims before the state courts.

To overcome the procedural bar on this basis, Petitioner needs to show both "cause" for not raising the claim in State court and "prejudice" resulting therefrom. Dixon v. Miller, 293 F.3d 74, 80-81 (2d Cir.2002). A petitioner establishes "cause" for failing to raise a claim when he can show that "some objective factor external to the defense" prevented him from following the procedural rule. Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). To show "prejudice," the petitioner must demonstrate that the constitutional error worked to his "actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

Although ineffective assistance of counsel can constitute cause, it may only do so when the representation is so ineffective that it violates the client's Sixth Amendment right

to counsel. Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); Bloomer v. United States, 162 F.3d 187, 191 n. 1 (2d Cir.1998).

For the reasons discussed below, based upon this Court's review of the record, all of the alleged errors committed by trial counsel are factually baseless, without legal merit, or both. Thus, appellate counsel cannot be found ineffective for omitting claims regarding trial counsel's performance which had no likelihood of success on appeal. Moreover, a defendant cannot be prejudiced by appellate counsel's failure to raise meritless claims. See Mayo v. Henderson 13 F.3d 528, 534 (2d Cir.1994) ("To establish prejudice in the appellate context, a petitioner must demonstrate that there was a 'reasonable probability' that [his] claim would have been successful ...." (alteration in original) (quoting Claudio v. Scully, 982 F.2d 798, 803 (2d Cir.1992)). Therefore, Petitioner is unable to establish the requisite cause and prejudice to excuse the procedural default and this claim should be denied on that basis.

### e.   Merits

Lastly, even if the procedural default could be excused, Petitioner's claim is plainly lacking in merit.  Essentially, the claim is that the fact that the RAI process is violative of due process because it does not directly consider the fact that the underlying sex crime occurred many years ago.  First, the Guidelines used to prepare the RAI provide for an additional ten points to be added to the risk factor calculation where the prior crime was committed within three (3) years of the instant offense. (Exhibit L).  Petitioner appropriately received no points for this factor because his crime was committed in 1979.  He has failed to establish any basis upon which to conclude that the mere fact that specific credit is not given for the age of the offense is so fundamentally unfair as to constitute a denial of due process. Although

Petitioner offers some criticisms of the predictive value of the RAG, "he has not shown that the factors on which the guidelines are based are unreliable indicators of the risk of reoffense by a sex offender so that their use violates the sex offender's right to due process" People v. Bligen, 823 N.Y.S.2d 42, 43 (1st Dep't 2006).

Second, the RAI is merely a recommendation to the sentencing court, which makes the ultimate reclassification decision.  See N.Y. Correction Law § 168-l (6). Petitioner was afforded with an opportunity to argue that the lapse of time was a mitigating factor when evaluating the likelihood of re-offense.  The fact that the sentencing court ultimately rejected that argument does not constitute a denial of due process. See People v. Flowers, 826 N.Y.S.2d 687, 688 (2 Dep't 2006).

Lastly, under SORA, as amended pursuant to the Stipulation of Settlement reached in Doe v. Pataki, 3 F. Supp. 3d 456, 472 (S.D.N.Y. 1998), a  defendant is entitled to notice and a hearing, pre-hearing discovery, and the right to appeal.   Courts considering due process claims seeking to impose additional requirements have uniformly rejected such claims as without merit and barred by the Doe v. Pataki stipulation.  See, e.g., Bligen, 823 N.Y.S.2d at 43; People v. Howard, 860 N.Y.S.2d 503, 504 (1st Dep't 2008).


### 3.    Ineffective Assistance of SORA Hearing Counsel

Petitioner was represented by two attorneys prior to and during the SORA hearings, Paul R. Corradini, Esq. and Michael P. Nevins, Esq.  Petitioner argues that these attorneys were ineffective because they (a) were unfamiliar with the mandates of Doe v. Pataki; (b) failed to assert Petitioner's constitutional challenge to the RAI; (c) failed to call expert witnesses; and (d) failed to call Petitioner's parole officer as a witness.

To prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a habeas petitioner must satisfy a two-part test.  First, the petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. Id. at 688.  In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Id.

Second, the petitioner must show that counsel's deficient performance prejudiced him. Id. at 694.  To establish the "prejudice" prong of the Strickland test, a petitioner must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. Id. at 694.  The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

First, Petitioner's ineffective assistance claims were never presented to the New York Court of Appeals and are thus unexhausted and procedurally barred.  Further, even assuming arguendo that the claims were not barred, they are plainly lacking in merit. Petitioner's claim that his attorneys were unfamiliar with Doe v. Pataki is conclusory and contradicted by the record, which indicates that counsel was both aware of Doe and cognizant of the relevant legal issues and standards.  See (Exhibit P, at p. 7-8, 11; Exhibit O, at p. 37-47).

Counsel can not be deemed ineffective for failing to raise Petitioner's constitutional

challenge to the RAI because, as noted above, that constitutional challenge is plainly lacking in merit.  In any event, it should be noted that counsel did ensure that Petitioner's *pro se* objections (Exhibit Q), in which Petitioner asserted various constitutional challenges, were received by the sentencing court and made a part of the record. (Exhibit O, at p. 32-33).

Likewise, Petitioner's claim regarding counsel's failure to call an expert witness is conclusory.  Petitioner fails to identify any expert witnesses that might have testified and has offered no specifics concerning how the testimony of such witnesses would have even arguably impacted the court's reclassification decision. See Vasquez v. United States, No. 96 CIV. 2104(PKL), 1996 WL 694439, at *7 (S.D.N.Y. Dec.3, 1996) (dismissing ineffective assistance claim where petitioner's "allegations [we]re vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source"; finding that "[t]he vague and unsubstantiated nature of the claims do not permit the Court to conclude that the charged errors reflect performance falling below an objective standard of reasonableness or that but for the errors the result would have been different"); United States v. Vargas, 871 F.Supp. 623, 624 (S.D.N .Y.1994) (rejecting ineffective assistance claim based on failure to investigate and failure to call character witnesses where there was "no evidence that avenues suggested by the client which might have altered the outcome were ignored" and petitioner "fail[ed] to identify what persuasive character witnesses would have been involved, or to show that counsel was unwise in not opening up such witnesses to cross-examination"); Madarikan v. United States, No. 95 Civ.2052, 1997 WL 597085, at *1 (E.D.N.Y. Sept. 24, 1997) (denying ineffective assistance claim based on failure to investigate or interview witnesses where petitioner's allegations of ineffective assistance

were "conclusory, and g[a]ve no indication as to what exculpatory evidence may have been revealed by an investigation"); United States v. Schaflander, 743 F.2d 714, 721 (9th Cir.1984) (denying as merely "conclusory" ineffective assistance claim based on counsel's failure to interview witnesses where the claim was unsupported by affidavits or statements from any witness or counsel)).

Lastly, Petitioner's claim that counsel was ineffective for failing to call his parole officer must fail because Petitioner has not established any reasonable likelihood that the parole officer's testimony would have altered the outcome of the proceedings.

Accordingly, for the foregoing reasons, Petitioner's ineffective assistance of counsel claim regarding the SORA hearing should be denied.

### 4.    Ineffective Assistance of Appellate Counsel

Petitioner was represented by Randolph V. Kruman, Esq. on appeal from the sentencing court's SORA decision.   Petitioner contends that Kruman was ineffective because he (a) failed to raise an ineffective assistance claim as to the performance of Attorneys Corradini and Nevins at the SORA hearing and (b) refused to raise the constitutional challenges to the RAI.

Although Strickland's two-pronged test was originally formulated to judge trial counsel's performance, it applies in the context of evaluating the effectiveness of appellate counsel's representation as well.  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.1994).   To establish that appellate counsel failed to render effective assistance, a petitioner must do more than simply demonstrate that counsel omitted a non-frivolous argument, because appellate counsel is not required to raise all potentially colorable arguments. Id. (citing Jones

24

v. Barnes, 463 U.S. 745, 754 (1983)).    As such, failure to raise an argument on appeal constitutes ineffective assistance only when the omitted issue is clearly stronger and more significant than those presented. See id. (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)).

As a threshold matter, Petitioner's ineffective assistance of appellate counsel was never presented to the New York Court of Appeals.  Typically, such a claim would be presented by way of a writ of error *coram nobis*, the method by which defendants in New York collaterally challenge the performance of their appellate counsel.  Because there is no time limit for filing a *coram nobis* application, Petitioner still could return to State court and file such an application.  Thus, his ineffective assistance of appellate counsel claims remain unexhausted.

In the past, a State prisoner's Federal habeas petition had to be dismissed if the petitioner did not exhaust available State remedies as to any of his Federal claims. See Rose v. Lundy, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).  However, an exception to the exhaustion requirement set forth in Rose v. Lundy has been provided for by statute.  Now, pursuant to AEDPA, a district court may, in its discretion, deny on the merits habeas petitions containing unexhausted claims. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

Section § 2254(b)(2) allows a district court to reach the merits of a habeas corpus petition despite nonexhaustion, thereby "effectuat[ing] congressional intent, conserv[ing] judicial resources, and afford[ing] petitioner prompt adjudication of his claim." Steele v. Walter, 11 F.Supp.2d 252, 257 (W.D.N.Y.1998) (quoting Cowan v. Artuz, 1996 WL 631726,

at *5 (S.D.N.Y.1996)) (quoted in <u>Loving v. O'Keefe</u>, 960 F.Supp. 46, 49 (S.D.N.Y.1997)).

Although the Second Circuit has not yet articulated a standard for determining when unexhausted claims may be denied on the merits, the majority of district court decisions in this Circuit have embraced a "patently frivolous" test for denying unexhausted claims. <u>See</u>, <u>e.g.</u>, <u>Naranjo v. Filion</u>, 2003 WL 1900867, at *8 (S.D.N.Y. April 16, 2003) (collecting cases).

A minority of courts have expressed the test for denial under § 2254(b)(2) as whether " 'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)." <u>Id.</u> (quoting <u>Hernandez v. Lord</u>, 2000 WL 1010975, at *4-5 n. 8 (S.D.N.Y. July 21, 2000) (citing cases, and analyzing the diverging views without deciding which standard is appropriate)) (internal quotations omitted in original).

In the present case, Petitioner's unexhausted ineffective assistance of appellate counsel claims fail either standard, as they are both patently frivolous and entirely meritless. Appellate counsel was not ineffective for failing to raise a claim of ineffective assistance of counsel regarding Attorneys Corradini and Nevins because, for the reasons outlined above, such a claim was lacking in merit and the record contradicts Petitioner's claim that counsel's performance fell below an objective standard of reasonableness.

Appellate counsel elected to focus on challenging the factors used by the sentencing court in reaching its determination and making the argument that Petitioner should have been granted a downward departure under the circumstances.  The addition of frivolous ineffective assistance claims would likely have distracted from the stronger arguments advanced by counsel.   <u>See</u> <u>Brunson v. Tracy</u>, 378 F. Supp.2d 100, 113 (E.D.N.Y. 2005) ("Appellate counsel's decision was therefore simply not ineffective, but prudent, as the

raising of this frivolous argument may well have distracted from other, more meritorious issues urged by appellate counsel."). Petitioner has failed to demonstrate any reasonable probability that an ineffective assistance claim would have been successful on appeal. See Mayo, 13 F.3d at 534("To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful ....' ") (alteration in original) (quoting Claudio v. Scully, 982 F.2d at 803); see also Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir.1994) ("[T]he failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Petitioner's argument regarding appellate counsel's decision not to raise his constitutional challenge to the RAI fails for the same reason, namely that there is no likelihood that such a challenge would have been successful on appeal. Indeed, as noted above, the New York appellate courts have uniformly rejected such challenges as lacking in merit and barred by the Doe v. Pataki stipulation.

As such, Petitioner's ineffective assistance of appellate counsel claim should be denied.


## IV. CONCLUSION

For the reasons stated above, the Court recommends Thomas Kaminski's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

27

Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge

DATED:        March 2, 2009

              Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

 March 2, 2009

Victor E. Bianchini
United States Magistrate Judge

29